UNITED STATES v. LAU CHU.

(Circuit Court of Appeals, Second Circuit. June 8, 1915.)

No. 247.

ALIENS ☞25—CHINESE EXCLUSION ACTS—"STUDENT."

Where a Chinese person came to the United States properly as a student, was admitted and lived in the United States as a student, and was actually a student when sought to be deported, the fact that he temporarily supported himself by working while his father was unable to send him money for his support did not permanently take him out of the class of "students," expressly excepted by treaty from the operation of the Exclusion Act.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 79–82; Dec. Dig. ☞25.

For other definitions, see Words and Phrases, Second Series, Student.

What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from an order of the District Court, Eastern District of New York, reversing an order of deportation of a Chinese person made by a United States commissioner.

Melville J. France, U. S. Atty., of Brooklyn, N. Y.

James A. Donegan, of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. This case is peculiar. Defendant came to this country in 1911, being about 16 or 17 years old. Before leaving Hong Kong he secured a certificate, issued to him by Ching Ming Chi, Viceroy, Acting Tartar General, and Superintendent of Imperial Chinese Customs, at Canton, China, which was viséed by the American Consul General, certifying that defendant was a student, about to leave China, for the purpose of studying in the United States; to the certificate was affixed the picture of defendant and his signature, and it is admitted that the defendant is the person mentioned and described in said certificate.

His father was a merchant, or a man of means, living in China, who sent him money for his support in this country until as the result of a revolution in China he lost his property and was unable further to support his son. The young man studied here, but did not engage in any other employment until his father and his grandfather (who lived

here) ceased to supply him with money. We find nothing to cast doubt on the truthfulness of this narrative—nothing to indicate that there was any fraud or misrepresentation about his entry. After his supply of money ceased, he went to work himself and earned money, of which he sent part to his father and saved some. Later on, and while this proceeding was pending, his father resumed sending him money. Defendant received $50 from him before the hearing in the District Court. The superintendent of the Sunday school stated that his organization had taken an interest in the young man and would see he was sent to school, even if his father did not himself furnish the money, that efforts were being made to have him admitted to the New York public schools, and that it had been promised that he would be so admitted.

Several questions have been raised here, as to the interpretation of the article in the treaty touching students and teachers, as to change of status, and as to rule 8 of the regulations, which need not be considered. The case is a peculiar one. We are satisfied from the proofs that Lau Chu came here properly as a student, was admitted as such, lived here as such, and is now actually a student. It is sufficient to say that in our opinion the circumstance that he supported himself temporarily until his father was able to resume sending remittances did not operate to take him permanently out of the class "student" which the treaty expressly excepts from the operation of the Exclusion Act.

The order is affirmed.